Good morning, Judge Callahan. Good morning, Judge Ferguson, Judge Fletcher, Matthew Omhoff on behalf of the United States. Good morning. With the Court's permission, I'd like to reserve three minutes for rebuttal. Thank you. And may it please the Court, based only on the facts in the affidavit in this case, the officers reasonably believed that the dangerous explosive process of manufacturing methamphetamine in the midst of a residential neighborhood. Now, the government has conceded. I'm sorry, Your Honor. Why don't you go directly to the affidavit and tell us what's in it. I've read it carefully, and I can't find probable cause, and I'd like to have you prove me wrong. Yes, Your Honor, I'd be happy to. And I think when we read this affidavit, we have to abide by this Court's guidance that, first of all, we need to give a common sense and practical reading of the affidavit, that we need to avoid hyper-technical rulings, and that we need to keep in mind, as this Court held in Woods and in Gill, that the magistrate is entitled to rely on the inferences drawn by the agents based on their training experience. And so here's what the affidavit said. The affidavit started out by saying that the DEA in Los Angeles had commenced an investigation of a man named Zhao, a Taiwanese man named Zhao. The affidavit then stated that the DEA had received a tip that a chemist was coming to the United States. But we never know that the chemist is Zhao, right? Well, we do. I think that the inference has to be drawn in this case, at least that the magistrate's inference, because here's what happened. They said, investigation of Zhao, a chemist is coming to the United States. They followed Zhao out of LAX. The flight arrived and they followed Zhao out. Now, it's completely unreasonable to think that the agents just followed an Asian man off of a flight from Taiwan out of LAX. The only common sense and practical reading of the affidavit, again, with due deference to the magistrate who read it, is that Zhao was the chemist, that they had prior information before he arrived, and that they followed him and identified him in some way. I think, again, to avoid a hyper-technical reading of the affidavit, that has to be what the magistrate inferred and that this court, as a reviewing court, does have to give great deference to that inference. Well, unfortunately, you haven't been able to convince anyone of this yet. You lost in two state courts, you lost in the district court, and now you're here, right? That is correct. And the only reason I'm here is because the government does feel strongly that the good faith exception does apply here. Well, yeah, I guess, but the good faith exception comes into play after the warrant falls, but you're still arguing that the warrant's good. No, I mean, I think I have to say that the warrant is good enough in order to get by the good faith exception. We've conceded probable cause here. All I'm arguing is that, based the agents could rely on this affidavit. It's not a great affidavit, but I point to United States v. Huggins, where our own Judge Fletcher actually wrote, felt so strongly that that affidavit was so bad that she needed to make clear in a separate concurrence how bad that affidavit was and how far from probable cause it was. Nevertheless, that court held, and Judge Fletcher joined in, holding that that affidavit nonetheless passed muster under the good faith test. And I think we can just compare that affidavit. In that affidavit, in Huggins, we have a situation where a prisoner in jail on drug charges, not a particularly credible individual, gives a tip that Huggins and others were involved in marijuana and LSD trafficking. This was a three-year-old, this was three-year-old information this prisoner was giving. There's no details, no predictive details in the tip at all. All that's said is that Huggins might have had a girlfriend named Rhonda, might have moved to Ashland. What do they do to corroborate it? So the tip is woefully inadequate in comparison to the tip in this case. A very unusual tip. A chemist is coming halfway across the world to manufacture methamphetamine. It's a very unusual tip. So we've got a... Well, except, you know, I guess to me your better argument is that, you know, I can't tell looking at it that that's Jow, you know, looking at the face of it. But clearly there talked to the magistrate judge and told the magistrate judge about some wiretap information. And clearly they talked about, and the magistrate decides that they don't need to put that into the, into the warrant. So... That's correct, Your Honor. And that's our backup argument. Well, except, but, you know, so we have, I think you have to get into extrinsic evidence to prevail. And then, but to get into the extrinsic evidence, I think there has to be an extension of what the law presently is, or we have to follow one of the other circuits. And... And I don't know that it's an extension, but I wanted to start there because... Well, if it's not an extension, tell me a case that says that we can do it. I, Hove. Hove actually does say... Well, Hove doesn't exactly say this. And well, and I would, I would point directly to Hove's holding, and I will quote directly from it. The district court aired, Hove says, in relying on facts that the affiant subjectively knew at the time he completed the affidavit, but that were not included in the affidavit or presented to the magistrate. And so Hove, while the facts of Hove were clearly different and we think it's distinguishable, in fact, I think the Hove court specifically chose its language to contemplate that there are two sorts of information that a district court can consider, what's in the affidavit and, I quote, what is presented to the magistrate judge. And so Hove actually supports the government's position here, but we're also supported by the Fifth Circuit, by the Sixth Circuit, by the Fourth Circuit, by the Seventh Circuit, in our limited holding, our limited encouragement of this Court, that facts outside the affidavit may be considered. And in fact, Leon and Massachusetts v. Shepherd, the companion cases on good faith, which started us down this road, both of them contemplated the consideration of facts outside the affidavit. In Leon, when the Court stated that all of the circumstances could be considered, it gave an example of a fact that's almost always outside the affidavit. I was a trial judge in Leon. Yes, Your Honor. In fact, I didn't know that. I'm sorry. And I don't know the reason. My question to you is, what weight do we have to give the two California Supreme – two California courts holding that this warrant was invalid? None at all. And I think under you – We disregard that entirely? Elkins v. United States, Your Honor, and it states very clearly that even when a State court has rejected a State warrant, we have to look at it, and there's no deference to that at all. We start straight. And in fact – Well, why did the State court – why was this a State court prosecution in the first place, then? I think it started there because the affidavit started there. And it was a State court affidavit. And as we all know, when you start with a State court affidavit, it's probably better to keep it State because, at least in the Central District, we always feel that – If it's a State court affidavit, why don't we apply State law, then, to whether it's valid or invalid? Well, because the Supreme Court makes it very clear that even State affidavits need to be subject to the Fourth Amendment good-faith analysis. Well, it's a State case, not merely an affidavit. It's a State case. It was a State case. Now it's a Federal case. And Elkins v. United States makes it very clear that we – that the only person you defer to is the magistrate who actually signed off on the affidavit. The only deference here under the law is to the magistrate that signed the affidavit, not to the State courts that have reviewed it and found it – found it unworthy. Well, wouldn't it make a difference in this case? In this case, the offend was also talked to the magistrate and had the conversation with the magistrate. They talked about jail. They talked about the wiretap and that the magistrate decided not – that that didn't need to be included. And so, what ended up in the warrant was what the judge decided should end up in the warrant. So, the – the offend basically told the judge everything that she knew. And she knows that the judge knows that. So, when she's looking at the warrant, she knows that it's jail because she told the judge that. And she knows that the judge knows that it was jail because they have that in the conversation. All right. Is this case different because the offend is the same person that talked to the magistrate and knows all of that information if you get into extrinsic evidence? Then say if it was just some other agent that is trying to invoke Leon that doesn't know about what the conversation was with the magistrate. Does that make a difference here? Well, I'm not certain. All that matters is what is presented to the magistrate. That's what the government's argument is. And so – So, but even – but if you're talking about when the officer's relying on it and the officer doesn't know that the chemist is, in fact, jail. Correct. All right. Just knows that a magistrate signed that. Correct. Whereas this particular affiant knows that the magistrate knows that it's jail and can look at that and – I don't think we can get into the subjective knowledge at all. I think that runs afoul of Hove. I think we have to only focus on what was presented. If we're going to address these facts – and there's two sets of facts, not just what the affiant said, but also the exigencies. And as Judge Fletcher wrote in Weber, and as in Ramos, this is a factor that can be considered, the exigency of the circumstance. Now, I know that Appellee has suggested that there was a delay here. And so how can you say that there was an exigency if there was a delay? I point to United States v. Eshigoyen, a case in which they're – a meth case, same kind of thing, a warrantless entry. The Court actually – this Court actually found exigent circumstances in that case with a six-hour delay. The officer delayed for six hours in that case. Yes, Your Honor. Yes, Judge Fletcher. Counsel, Judge Trevizan came down on you pretty hard. And – He did. I lost all my hair because of it. So what deference do we give to his findings? None at all. It's de novo review. If he had made any adverse credibility findings, I think you'd have to defer to him. But he specifically said the credibility of the affiant is at issue here. So you've got all the facts and it's de novo review under United States v. Curt and all the other cases this Court has decided on a good faith exception. He was very disturbed by the fact that the magistrate, if he was told these things, hadn't insisted on some interlineation in the affidavit. He was. And I would point – and I would – I'm sorry. Go ahead, Judge. I'm concerned. I'm very concerned about that, too. Now, this particular police officer said that she'd done hundreds of affidavits, she'd made all these arrests, and she knew what to do. It just seems like we've got kind of a Keystone Cop situation here where nobody did the right thing. And I think that's true. And I would point the Court here to United States v. Curt and United States v. Negrete Gonzalez, two cases out of this circuit in which there was a very similar Keystone Cops episode. In United States v. Curt, the circumstance was that the Court failed to – that it was a murder case, as I recall. And in that case, the – they went – they got a warrant. It had the complete wrong address on it. They're searching for a murderer. They go to the house. They talk to the parents. The parents say, this isn't his house. He lives over here. The agents call up a different judge, not even the judge who signed that warrant. And that judge says to them over the phone, go ahead and change the – change the address. Now we've got a real problem, because there's nothing in that affidavit that connects him to this new place, except not under oath, over the phone, change the address. This Court still held that the good faith exception applied, even if that violated the Fourth Amendment. Negrete Gonzalez. In this case, the agents failed – didn't comply with Rule 41. They failed to read the magistrate over the phone the actual affidavit, which is required under Rule 41. This Court held in that case that it could have even been a fourth of – and so, of course, in that case, like here, the agent knew, you should probably have all the facts relevant to probable cause. Nevertheless, they – and they knew that Rule 41 required them to read the affidavit, but the judge told them, go ahead. And this Court specifically said, the – certainly, the agents played a role in the mistake, but the error was primarily the judges. And that's a technical issue. Here we're dealing with something that is quintessentially in the province of a magistrate judge, which is a probable cause determination. That's a place where we definitely don't have – want agents. And in Massachusetts v. Shepherd and United States v. Leon, they both said, we don't expect agents to second-guess a magistrate when it makes its probable cause determination. So, whereas with Kurt and Negrete Gonzalez, you have something that was more shared, and the agents screwed it up, and the judge screwed it up. In this case, we have something that's definitely in the magistrate's province, which is the probable cause determination. Well, I agree with you on that point, in the – in the sense that the agent told the judge what she knew. Yes. And it – it does put – just like it puts you in a difficult situation to argue with us and tell the emperor that he or she is wearing no clothes, it also – I think the agents are in a situation that the judge says, you don't need to put that in there. Well, then if you sit there and you start to write it in, you know, that's not going to go – that's not going to go too well for you. But it's still, you know, so is what you're arguing in this situation, if the magistrate just doesn't do a good job on it, that the officer is basically entitled to rely on that? Well, and that's what the – that's what Leon and Massachusetts v. Shepherd have said. They have actually said that the – and what we're talking about here is not – the Fourth Amendment was violated. We're talking about the exclusionary rule here. And the exclusionary rule is intended – Leon said the application of the exclusionary rule is not going to deter magistrate judges. It's only going to deter agents. And so the only reason to apply it is if it's going to deter agents. In this case, the agent didn't do a great job in the affidavit, but she did what she was supposed to do, present an affidavit to a magistrate judge that is arguably a close call. And where it's a close call, we submit that like the Sixth Circuit, the Fourth and the Fifth and the Seventh, that additional facts presented – actually presented to the magistrate. And there's no dispute here that they were presented to the magistrate. There's no dispute at all. These facts were there. And there are additional facts that definitely support the probable cause along with the exigency in this case. Suppressing here does nothing but punish the magistrate. I would suggest to this Court, certainly, that it could word a very strong opinion that made it clear that magistrates should write in stuff that they think is relevant to probable cause and err on the side of inclusion, or tell magistrates just to reject the warrant and tell them to come back with a new affidavit. That will – that will do the job, I think. But to punish the agents for the magistrate's error in this case and failing to catch that this affidavit didn't pass probable cause muster is – Well, DEA agent overseas called a State policeman rather than a DEA agent in the United States. That came out in the affidavit – excuse me, in the hearing. The reason was – yes. Tell me why he called a State officer rather than a Federal officer. The reason was, is because California has very specific procedures about sealing affidavits. It's people – it's Hobbs versus the people of California, I believe, is the case. And that in the State, they are more able to at least – and under that procedure, the Hobbs procedure, they submit the affidavit. They seal that portion, submit the affidavit in camera to the State court judge, and then that judge makes a determination as to whether there's probable cause. That's what they did here, and the reason was they wanted to protect their wiretap. They knew they couldn't do that in a Federal case, and so by taking it State, they had a greater opportunity to protect this wiretap, which turned out had great information and led to the seizure of 70 pounds of 100 percent pure meth and a meth lab abutting a schoolyard in the middle of a residential area. So I think that under the circumstances, it's the – all we're faced with is an affidavit plus the exigency, which I think, again, under United States versus – in Ramos, this Court actually noted that – You're at three minutes. I don't know if you want to reserve. I see that. I'll just wrap this point up. In the United States versus Ramos, the Court noted that there's stuff left out of probable cause here. They should have put this stuff in, but they didn't. But because of the exigency, and clearly there's exigency here. Clearly there's exigency here under this Court's opinions in Wilson, Eshigoyen, in Ortiz-Sandoval, excuse me, yes, Ortiz-Sandoval, all of those cases are exigency meth-related cases where this Court said you sometimes don't even need a warrant to go in when you have probable cause to believe that there is meth being manufactured. I'll save the rest of my time for rebuttal. All right. Thank you. Thank you. Good morning. Counsel. Good morning, Your Honor. I'm Stephen Fry. I'm representing the Appellee, Mr. Tai-Tung Wong. Your Honor, we are asking the Court to affirm the district court's decision that Detective Fishburne could not have relied upon an affidavit based on the search of probable cause as to render official belief in its existence entirely unreasonable. Now, Mr. Rumhoffer pointed the Court to Leon and suggested that the California Court's decisions and the lower court's decision in this case mean absolutely nothing, but we would suggest otherwise. Police officers are expected to be reasonably well-trained and to understand, at least have a rudimentary understanding of what the law says. And in assessing their objective good faith reliance on a search warrant issued by a magistrate, Leon instructs that the focus is on the affidavit, that reasonable reliance means that the affidavit was sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. And it's from that passage in Leon where we submit that the Court is entitled to consider what the prior courts have done in assessing the probable cause set forth in that affidavit and whether Detective Fishburne could have relied upon that. The California Superior Court said that there was no probable cause and Detective Fishburne was not entitled to rely on that. California Court of Appeals affirmed. Judge Trevisan, as the Court has noted in rather strong language, essentially agreed that there was no probable cause set forth in that affidavit and that Detective Fishburne was not entitled to rely on the magistrate's authority otherwise. And again, Leon says that reasonably well-trained police officers should know that when searches are illegal despite a magistrate's authorization. And yes, we consider the totality of the circumstances. But given those totality of the circumstances, what the California courts have done and what Judge Trevisan did, we suggest that no reasonable or thoughtful or competent judge could conclude that this affidavit sets forth sufficient probable cause. Well, if I could ask you, I'd like you, do you think that the Fourth and Sixth Circuit cases, Legg and Frazier, are wrongly decided or just the Fourth Circuit case which deals with intentional omission of information from the affidavit? Well, Your Honor, I think both are wrongfully decided. I think the Sixth Circuit correctly decided Lawton, which relied on Hove, this Court's decision, in saying that in assessing probable cause that the focus is on the four corners of the affidavit. Now, Lawton, I'm sorry, Frazier, did go further and suggested that information in Lawton, the police officer knew information that was not told to the issuing magistrate. Which is different than here. That's different than here. And that was, we concede, that was the case in Hove as well. But Hove spoke in explicit language that in assessing probable cause, the focus is on the four corners of the affidavit. That's what Lawton says. And the Kentucky District Court opinion followed Lawton in a situation exactly the same as this and said that the Court could not consider, as part of the good faith analysis, information told to the issuing magistrate but not included in the affidavit. Unfortunately, Frazier came down and Frazier is an entirely different case than this one. In that case, the magistrate and the police officer could not have attempted to be more competent. There was a long-running investigation. Five search warrant affidavits had been drafted by this ATF agent. And then in the drafting of the sixth affidavit, the magistrate suggested, in assessing all of them, that information be included, for example, that the CI had made actual purchases from the defendant and that the affidavit include some Sixth Circuit cases that said that it's reasonable to expect that drugs would be located in a residence of a suspected drug dealer. Absolutely appropriate for the magistrate to do. But the ATF agent in the sixth affidavit, which is the affidavit of the defendant Frazier, while the ATF agent made those changes in the first five, he didn't make it in the sixth one. So it was essentially a scrivener's error. It was not, it had, it implicated nothing that the exclusionary rule is designed to protect and that is police misconduct. And there was no police misconduct there. Now, in this case, your honors, we maintain that the prophylactic rule of the exclusionary rule is designed to protect against exactly what Detective Fishburne did in this case. She got a bare bones affidavit. Yes, there may have been some exigent circumstances, but what she indicated that she told the issuing magistrate would not have required more than five to ten minutes to include in the affidavit. And she admits in the suppression hearing that she knew that the information should have been in there, conceding that she should have included that. Now, what was the information that was omitted? Okay, first of all, the DEA wiretap. Well, even if the court is inclined to not to extend hold to this situation and to I thought the magistrate told her she didn't have to put it in. Well, I don't believe that that was her testimony. I believe that she said that she indicated to the magistrate that she knew it and that he then went ahead and issued the search warrant. But she admitted on cross-examination that she believed, that she conceded that the information should have been in there. But even if it, even if the information was in there, our position is that there was the three pieces of information that Detective Fishburne testified that she left out. Even if all that information was included, it still would not arise to a sufficient probable cause showing to show, to satisfy the good faith exception. What did she omit? Okay, the DEA wiretap. Well, her testimony about the wiretap, well, she didn't know much about it. She just knew that information about Jowell came from the wiretap. She did not say, for example, that she was told that it was Mr. Jowell himself on the wiretap talking to suspected Asian methamphetamine manufacturers in Hong Kong that, hey, guys, I'm a chemist. I can come in and I can help you with what your problem is. Now, if that had been the situation and if that had been included in the affidavit, that would have gotten her a long way towards establishing probable cause. But that's not what she knew and that's not what was in the affidavit. Now, on the other hand, if what she knew from the wiretap was that simply two suspected Asian methamphetamine manufacturers says, what do you know about this Jowell guy? Here he's a chemist. You think he could help us? Then they don't get much further down the road to probable cause than they already are. But given what she knew was just that there was a wiretap without any details of what that wiretap disclosed and that based on the wiretap that Mr. Jowell was a suspected suspect known to be a chemist, the fact that there was a wiretap doesn't get her much further down the road towards probable cause than what she stated in the affidavit. And I will agree with Mr. Umphoffer, the second piece of information, the identification of Jowell was not in the affidavit, but clearly they had identified him. Otherwise they wouldn't have followed him as opposed to every other person arriving from Hong Kong that day. But the fact that they included that in the affidavit, our position is that doesn't get them any further down the road towards establishing probable cause in good faith reliance than they are right now. The only thing that potentially could get them further down the road of probable cause, given her testimony at the suppression hearing, was this alleged counter surveillance driving. But she doesn't elaborate as to what that might be. Now it could be that Mr. Luong just checked his mirror a couple times, which is hardly counter surveillance driving, but a police officer perhaps could have interpreted it that. Or we don't know if he drove around the same block three times or whether he accelerated quickly and then decelerated in an attempt to see if anyone was following him. Or if he, for example, exited from the far left lane of the freeway to see if anybody exited to follow him. He certainly didn't do a very good job at counter surveillance driving since Detective Fishburne was able to stand right next to him at the Home Depot and listen to him talk about fitting for a hose. So the counter surveillance driving, given the paucity of information at the suppression hearing, doesn't get the government much further down the road to probable cause than they already are either. So our position is even if the court considers the information disclosed to the magistrate, an unsworn testimony that was not included in the affidavit, it still does not push the government just over the goal line to get to, for Detective Fishburne to rely on the good faith exception. And the Third Circuit has said, and Judge Trebrizian held, that the good faith exception is not a magic panacea. It's not a magic lamp that the government can rub every time they get in trouble. There has to be some sort of standard. And the standard that the government is arguing on this court today would essentially allow the good faith exception to subsume the probable cause requirement of the exclusionary rule. In this case, the magistrate's not going to get called to the stand to testify. So the only person that would be the testifying person at the suppression hearing is the officer herself. And what incentive would she have if there were, if the court were to allow her to just say that she told the magistrate anything, what incentive would she have to say in a case where they got a lot more meth than they expected that they would have? Well, you know, yeah, I told the magistrate that there was some counter He just said not to include it in the search warrants. And, you know, there would be no incentive for the government to essentially abide by the Fourth Amendment requirements. We maintain, Your Honors, that hold should be extended to the situation present here, that when assessing the probable, the good faith exception to the exclusionary rule, that the four corners of the affidavit should govern, that even if not, that the information that was omitted by Detective Fishburne and told of the magistrate, that still does not get the government to the sufficient showing of good faith reliance on probable cause. We would ask the Court to affirm the decision of the district court. Thank you for your argument. I'd first like to just still, it may be a losing battle, but I think it's a good battle, but encourage the Court to line up this affidavit against the affidavits that it has found were insufficient but still passed the good faith test. I think the affidavit in Tate and Clark and Huggins were all worse than this affidavit. In Tate, you had a smell of ether and three or four black men hovering around a white car. And then all the affidavit did was go out and smell ether. Now, in the affidavit itself, they said there's an innocent use for ether. It's cleaning engines. But that was it in that affidavit. This affidavit clearly reflects more and reflects what this Court referred to in Fowley. Judge Reinhardt, in distinguishing Hove in that case, said all you need is a plausible theory to get past good faith muster. And in Fowley, the circumstances were particularly interesting because it was the ranch foreman who had keys to a ranch where they found, you know, some drugs. And, of course, the ranch foreman would have the keys. He's the ranch foreman to that place. Nevertheless, this Court held that based on that, the fact that drugs and keys were found, they could search this place, which there's an innocent explanation for having those keys. So I would encourage the Court to, again, just line up this affidavit, start there, and look more closely at Huggins and Clark and Tate and Mendonca and Fowley. Second, I'd like to the extent that additional facts are being taken into account. There's really no question that you can look beyond the affidavit. Leon and Massachusetts v. Shepherd, both countenance looking beyond the affidavit in the good faith analysis. The question is, what facts can you consider? Now, every circuit that's considered this, the First, the Eighth, the Eleventh, the Fourth, Fifth, Sixth, and Seventh, have all said that you can consider facts not as facts outside the affidavit. The First, Eighth, and Eleventh say you can consider even facts subjectively known. Of course, that's Hove. So we're not going there. But no circuit has yet held that facts presented to the magistrate, even if they're outside the affidavit, cannot be considered in considering probable cause. And so I would focus on that. Finally, I would encourage the Court to think about the policy here. The magistrate judge made the mistake here. The magistrate judge failed to find that the warrant lacked probable cause. It was the magistrate judge's error, and I would ask the Court not to punish the agents for the magistrate judge's mistake. And on that, I'd submit. Historically, it may be interesting to know that Leon was the case where the facts occurred in Pasadena. Is that true? I did not know that. I did not, in fact, know that. Thank you. Oh, you started and finished here. That's that. Thank you, both of you, for your argument. Thank you. This will conclude today's calendar and will be in recess until tomorrow morning at 9 o'clock. Thank you very much. All rise for the 7th century.
judges: B. Fletcher, Ferguson, Callahan